Filed 7/30/26  Karrass v. Carey CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| GARY KARRASS, as Trustee, etc., | B344608 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 24SMCV03529) |
| v. | |
| ELIZABETH CAREY, | |
| Defendant and Respondent. | |

APPEALS from a judgment of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge. Affirmed.

Law Offices of Mark Henry Shafron and Mark Henry Shafron for Plaintiff and Appellant.

No appearance by Defendant and Respondent.

_____

The trial court dismissed appellant Gary Karrass's unlawful detainer complaint because it found defective the notice to cure violation of covenant or quit. We affirm.

On July 23, 2024, plaintiff landlord Karrass, as trustee of the Gary Karrass Trust dated March 14, 2011, filed a complaint for unlawful detainer against defendant Elizabeth Carey. At issue was Carey's possession of a single family dwelling in Santa Monica, California. Karrass and Carey had entered into a written lease by which Carey agreed to pay a monthly rent of $8,500. Karrass alleged he served Carey with a 3-day notice to cure violation of covenant or quit. The alleged period of compliance expired on July 17, 2024. Carey did not comply. Karrass alleged he served the notice on Carey on July 12, 2024.

The notice to cure violation of covenant or quit (the Notice) was attached as Exhibit 2 to the form complaint. It stated: "[Y]ou were given notice on June 24, 2024, that Landlord was intending on entry of the hereinafter described residence on July 9, 2024 to make repairs dictated by the Department of Building and Safety pursuant to an Order to comply (Exhibit 'A' hereto) issued, as a result of a complaint you filed, to make the repairs dictated therein. One of the repairs dictated was the replacement of a stairway handrail; although Landlord's staff person presented himself on July 9, 2024 to undertake that handrail installation, you interfered with that work, indeed you prevented him from installing the handrails that go up to your office and you told Landlord's staff person that he could not move furniture, cover furniture, or do anything else in order to complete his work. The Order to Comply has a complete date of August 1, 2024. [¶] **NOTICE IS FURTHER GIVEN** that within three (3) days (excluding Saturdays, Sundays and holidays) after service of this

2

Notice upon you, you are required to permit Landlord's staff person to enter the hereinafter described residence to install the handrails required by the Order to Comply and to do nothing to interfere with that effort, or to quit and deliver up possession of hereinafter described residence, to the Landlord . . . ."  The Notice also stated that if Carey refused to permit Karrass to enter the residence to "install the handrails required by the Order to Comply," he would declare the lease forfeited and institute legal proceedings against her to recover possession of the dwelling and "to recover rents and damages as provide[d] for by law." (Boldface and capitalization omitted.)  Karrass later notified Carey on July 15, 2024 that the repairs would be done on July 17, 2024.  Karrass alleged Carey refused to allow the repairs to proceed on July 17, prompting the filing of the unlawful detainer complaint.

As stated in the Notice, an Order to Comply from the City of Los Angeles with a compliance date of August 1, 2024, was attached as Exhibit A to the Notice and it was incorporated into the unlawful detainer complaint.  The Order to Comply stated: "An inspection has revealed that the property . . . listed above is in violation of the Los Angeles Municipal Code (L.A.M.C.) sections listed below.  You are hereby ordered to correct the violation(s) and contact the inspector listed in the signature block at the end of this document for a compliance inspection by the compliance date listed above."  The Order to Comply listed three violations:

- "Lighting in the upstairs bathroom is in need of general maintenance and repair."
- "Smoke alarms are missing or disabled."
- "Missing handrail on stairs. [¶] You are therefore ordered

3

to: provide the missing handrail leading to the upstairs."

Karrass filed a Plaintiff's Mandatory Cover Sheet and Supplemental Allegations—Unlawful Detainer on July 23, 2024. The pleading confirmed that Karrass sought possession of residential, not commercial, property and that the action was not based, in whole or in part, on any alleged default in payment of rent or other charges.

Carey filed an answer denying the allegations of the complaint, raising several affirmative defenses, and specifically addressing the notice to cure violations or quit. Among other things, she alleged the Notice was based on a breach of covenant but it did not specify what she must do to cure the breach and did not give her three days to cure the breach as required by Code of Civil Procedure section 1161, subdivision (3); she in fact committed no breach; the facts stated in the Notice were untrue; and the Notice was not property served upon her.

On October 2, 2024, both parties appeared before the trial court and waived jury trial. Court trial began on December 18, 2024. It resumed and ended on December 20, 2024.

The testimony at trial was that on July 9, 2024, the repair date alleged in the Notice, Karrass sent a worker who installed the handrail ordered by the City of Santa Monica. The worker who did the installation testified that he was told to install three handrails. He installed two on the staircase going up the stairs; Carey did not interfere with his work. It was only when he began to move her furniture to prepare the premises for installation of a third handrail in a different location did Carey tell him to stop and leave the premises.

Karrass's property manager also testified. She acknowledged that the Order to Comply required installation of

4

one (singular) handrail.  The property manager made a unilateral decision to have handrails installed that day on all stairs, not just the *one* handrail required by the Order to Comply.

At the conclusion of the evidence, Carey moved to dismiss the complaint on the grounds that the handrail installation mandated by the Order to Comply was completed on July 9, 2024 without Carey's interference in any way.  She argued she was unable to comply with the Notice because the handrail installation in the Order to Comply, which was attached to the Notice, was completed on July 9, 2024, three days before she was even served with the Notice on July 12, 2024.  Carey moved to dismiss the complaint "based upon the reading of the order to comply as singular."

The trial court asked counsel: "How does one receiving the 3-day notice make that determination as to what to cure? [¶] . . . [¶] You would agree with me that the notice from the city is singular.  It is a 'handrail to the upstairs.' [¶] And it's uncontroverted that the evidence in the record thus far is that two handrails were installed on July 9th.  And the record reflects that the 3-day notice was served after that; right? [¶] So in a sense, what's the tenant to determine what is to be cured when she received a 3-day notice when the order that's attached to the 3-day notice is singular in nature, it is a handrail needed upstairs.  It's ambiguous as to what upstairs was meant. [¶] There's no determination by anyone from the plaintiff's side to contact the city to get clarification as to what was meant in that order. [¶] Am I correct thus far?"  Karrass countered by insisting that the Notice was "very specific.  It's the handrail that was sought to be installed and was not allowed to be installed–very specific which one that is."

5

The trial court responded: "But the 3-day notice also refers to the city's order, does it not? [¶] . . . [¶] The summary nature of unlawful detainer proceeding requires strict compliance with the notice provisions. This notice is ambiguous to a tenant. [¶] What should I cure when it's referencing an order . . . that's attached in reference to the 3-day notice says 'handrail.' Handrail. [¶] And we know handrails were installed on July 9th. So the ambiguity is when the three-day notice is served on the tenant, what is the tenant supposed to cure at that time when handrails were installed on July 9th, which therefore seems to comply with the order that's attached and referred to [in] the 3-day notice. [¶] I think your 3-day notice is defective on its face. That's the problem here. [¶] . . . [¶] I understand the point that plaintiff is making that it then, upon receipt of the notice from the city to cure a defect undertook to cure all of the issues that it felt . . . was a potential problem in terms of having handrails on every elevation in the home that didn't have one. [¶] I can understand why the plaintiff then took that step. However, it doesn't detract from the ambiguity in the 3-day notice. That's the problem here. It's a poorly-crafted 3-day notice." "[Y]ou have to read it in context, You're reading it in isolation. You're reading it as though there's no attachment and there's no order that's referenced in your 3-day notice. [¶] . . . I am just calling balls and strikes here. It is an ambiguous 3-day notice in terms of what is the tenant supposed to cure upon receipt when—again, I'm repeating myself– when on July 9, handrails—plural—[were] installed, leading upstairs. [¶] . . . [¶] If you did not reference the order and attach it, then maybe you would have an argument that this is not ambiguous. You are right the landlord has a right to make repairs and to enter the property upon proper notice as

6

required by the code.  That is not lost on me.  But the problem is that it's ambiguous because of how it's crafted."

The trial court granted Carey's motion to dismiss the complaint pursuant to Code of Civil Procedure section 631.8.  The trial court entered judgment in favor of Carey and against Karrass "due to the defective 3-Day Notice at issue."

The court denied Karrass's post-judgment motion to tax costs and granted Carey's request for costs in the amount of $2,454.92.  On March 28, 2025, the trial court granted Carey's opposed motion for attorney fees and awarded her $69,560 in fees.  That same day, the trial court entered a Second Amended Judgment which included the awards of costs and fees. Karrass appeals.

## DISCUSSION

A.  *Applicable Law*

"The Unlawful Detainer Act governs the procedure for landlords and tenants to resolve disputes about who has the right to possess real property." (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394.)  Given the need for quick, peaceful resolutions of unlawful detainer actions, the statutory procedures must be strictly adhered to, including the stringent requirements for service, notice, and filing deadlines.  (*Id*. at pp. 394–395; see *Coyne v. De Leo* (2018) 26 Cal.App.5th 801, 805.)  The statutory requirements in unlawful detainer proceedings must be followed strictly.  (*Eshagian v. Cepeda* (2025) 112 Cal.App.5th 433, 457.)

7

Unlawful detainer actions are authorized and governed by Code of Civil Procedure section 1161 et seq.  A plaintiff may file an unlawful detainer complaint under section 1161, which specifies the circumstances under which a tenant of real property is guilty of unlawful detainer.  (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 478.)  A tenant may be guilty of unlawful detainer if the tenant fails to perform conditions or covenants of the lease or agreement under which the property is held.  (Code Civ. Proc., § 1161, subd. (3).)

A valid three-day notice to quit is a prerequisite to an unlawful detainer action.  (*City of Alameda v. Sheehan* (2024) 105 Cal.App.5th 68, 75.)  "The notice's purpose is to inform the tenant of the breach so the tenant can rationally choose whether to cure the breach and retain possession, quit the property, or contest the allegations."  (*Lee v. Kotyluk* (2021) 59 Cal.App.5th 719, 731.)  The primary concern is providing the tenant with the opportunity to cure and retain possession.  (*Ibid.*)

B.  ***Standard of Review***

In an appeal from an unlawful detainer judgment, we review the trial court's findings of fact to determine whether they are supported by substantial evidence.  (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1425.)  Under the substantial evidence standard of review, we must consider all the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the findings.  (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266 (*ASP*).)  It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trial of fact.  (*Ibid.*)  Our authority begins and ends with a determination as to whether, on

8

the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of the judgment. (*Ibid.*)

Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fat, which must resolve such conflicting inference in the absence of a rule of law specifying the inference to be drawn. (*ASP, supra*, 133 Cal.App.4th at p. 1266.) To be substantial, the evidence must be of ponderable legal significance, reasonable in nature, credible, and of solid value. (*Ibid.*) However, substantial evidence is not synonymous with any evidence. (*Ibid.*) The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record. (*Ibid.*) To the extent the trial court drew conclusions of law based upon its findings of fact, we review those conclusions of law de novo. (*Id.* at pp. 1266–1267.)

As in all appeals, we must presume the unlawful detainer judgment is correct, indulge all intendments and presumptions in favor of the trial court, and only reverse if the appellant meets its burden of establishing prejudicial error. (See *Hall v. Municipal Court* (1974) 10 Cal.3d 641, 643.) We review the result in the unlawful detainer action, not the trial court's reasons. The judgment must be affirmed if it is correct on any legal basis. (*Espinoza v. Shiomoto* (2017) 10 Cal.App.5th 85, 100.)

C.     ***Analysis***

1.     <u>The Notice was Defective</u>

On appeal, Karrass argues that the language of the lease and Civil Code section 1954 entitle him to enter the premises to

9

make needed repairs "whether they be singular or plural." Karrass also repeats his argument that the Notice was not ambiguous as it refers to " 'handrails leading up to the office.' " (Italics omitted.) He also argues that the specific repairs to be performed by a landlord are not required by law to be set out in detail.

Some of that may be true, but as the trial court recognized (and appellant ignores), eviction notices are strictly construed. The complaint incorporated the Notice, and the Notice incorporated the Order to Comply in its text and as an attachment. It is reasonable to believe that Karrass was telling Carey to allow the repairs required by the Order to Comply to be completed. The undisputed testimony was that she did so. That there may have been other repairs the landlord wanted to accomplish at the same time is immaterial; the Notice told Carey she would be subject to eviction if she did not allow the repairs to go forward as mandated by the Order to Comply. By the time she received the Notice, however, those repairs had been successfully completed. There was nothing more for her to do under the Notice Karrass gave her.

The trial court was correct to read the Notice in context, that is, with reference to the Order to Comply attached to it and incorporated by reference. We agree the Notice was defective in that it apprised Carey of an obligation to cure a covenant violation, that is, not allowing repairs to be made, when no violation existed because repairs that seemingly conformed with the Order to Comply had already been made.

2.   The Trial Court Correctly Found That Carey Did Not
     Fail to Mediate the Dispute

Karrass next contends that the trial court awarded Carey attorney fees, ignoring provisions of paragraph 35A of the lease which state: "Housing Provider and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. . . . If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action."

Paragraph 35B immediately following the mediation provision states: "The following matters are excluded from mediation: (1) an unlawful detainer action[.]"

With no citation to authority, Karrass appears to contend that because he offered to mediate, the specific exclusion of unlawful detainer actions from mediation does not apply. We disagree. The plain language of paragraph 35B controls this issue, that is, mediation is not required for unlawful detainer actions. Alternatively we conclude that Karrass has forfeited this issue by failing to cite any legal authority to support his contention. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 [we may and do disregard conclusory argument not supported by pertinent legal authority].)

Further, Karrass's contention that he asked Carey to participate in mediation of the issue of repairs is not factually supported by the record. Karrass contends that he, through counsel, asked Carey to participate in mediation via an email

11

sent on April 23, 2024. The email from Karrass's counsel tells Carey that Karrass "has no unresolved issues regarding repairs at your premises." It then goes on to ask Carey to participate in mediation "[r]egarding all other issues." Carey replied by email dated April 29, 2024, that "[m]ediation was refused to me in June." Karrass's counsel responded the same day: "Putting aside that there may have been a request to mediate back in June 2023, which supposition is not conceded but simply stated for the purposes of this e-mail, the issues my client wishes to mediate involve the end of the lease which occurred in February 2024 and you[r] refusal to execute the new lease that was presented to you in February 2024, and as such could not logically have been the source of the purported Request for Mediation dating back in June 2023." Carey responded that the landlord was issued a compliance order from the Los Angeles Housing Department so when could she expect repairs to be made. At that point Karrass's counsel stated that his client had already offered to mediate repair issues but Carey had declined to mediate.

Karrass's counsel's last email stating that Karrass had previously offered to mediate repairs misstated Karrass's position in his two prior emails—that he had no "unresolved issues regarding repairs" but would mediate "all other issues" and that he wanted to mediate Carey's refusal to execute a new lease. Karrass cannot now claim he offered to mediate repair issues given his stated offer that specifically excluded repair issues. We conclude Karrass failed to carry his burden to establish Carey's refusal to mediate issues raised in the unlawful detainer complaint and that Karrass had actually proposed mediation of those same issues. The trial court did not err in concluding that there was neither a request to mediate nor a refusal to mediate

12

the issues underlying the unlawful detainer action before "resorting to court action."

### 3. The Attorney Fees Cap Was Not Mutual

The trial court awarded Carey $69,560 in reasonable attorney fees and $2,454.92 in costs. Karrass contends these awards violated paragraph 36 of the lease: "In any action or proceeding arising out of this Agreement, the prevailing party between Housing Provider and Tenant shall be entitled to reasonable attorney fees and costs collectively not to exceed $1,000." He acknowledges that Addendum No. One to the lease also provides: "Paragraph 36, Attorney's fees to be modified as follows: In the event of a dispute, Tenant shall be responsible for its own attorney's fees and all associated costs. In the event Landlord prevails in such dispute, Tenant shall be responsible for Landlord's attorney's fees and all associated costs. In no event shall Landlord be responsible for Tenant's attorney fees and all associated costs."

Karrass argues that because the Addendum No. One violates public policy and is contrary to the language of Civil Code[1] section 1717, it is invalid. He contends the severance provision of the lease dictates that "If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect." Karrass argues then that paragraph 36's limitation of fees and costs to $1,000 should be given full force and effect.

---

[1]     Statutory references are to the Civil Code.

13

Karrass provides no legal authority whatsoever for his contention that the superseded limitation of fees and costs in paragraph 36 is necessarily resurrected if Addendum No. One is invalid. As a result, we deem the contention forfeited. (*City of Santa Maria v. Adam, supra,* 211 Cal.App.4th at p. 287 [we may and do disregard conclusory argument not supported by pertinent legal authority].)

Were we to reach the merits, however, we would affirm the trial court's award of fees and costs. We review a determination of the legal basis for an award or denial of attorney fees de novo, as a question of law. (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 821.) Section 1717 permits parties to a contract to agree how to allocate attorney fees. "The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610.) It "was enacted to establish mutuality of remedy where contractual provision makes recovery of attorney's fees available for only one party [citations] and to prevent oppressive use of one-sided attorney's fees provisions." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128.) Thus, "[c]ourts have recognized that section 1717 has this effect in at least two distinct situations. [¶] The first situation in which section 1717 makes an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy, is 'when the contract provides the right to one party but not to the other.' [Citation.] In this situation, the effect of section 1717 is to allow recovery of attorney fees by whichever contracting party prevails, 'whether he or she is the party specified in the contract or not' (§ 1717, subd. (a))." (*Santisas*, at pp. 610–611.)

14

We conclude section 1717 does not void Addendum No. One's unilateral allotment of fees.  It merely instructs courts to read its unilateral provisions as reciprocal.  Read as reciprocal, Addendum No. One is neither void nor superseded by a resurrected paragraph 36.  The trial court was correct to find Carey the prevailing party and award her reasonable attorney fees and costs without the amount limitation of superseded paragraph 36.[2]

## DISPOSITION

The judgment is affirmed.  Costs are awarded to defendant.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, P. J.

We concur:

WILEY, J.

SCHERB, J.

---

[2] Carey's motion to dismiss the appeal, filed May 18, 2026, is denied.

15